## DuPONT v. DuBOS.

1. If a party has been induced by fraud to execute a deed of conveyance, can he bring action at law to recover the premises, and, by proving the fraud, defeat his deed when interposed as a defence to the action?
2. But where he sues in equity for the cancellation of his deed, alleging that it was procured by fraud, it is a purely equitable action, in which a trial by jury of issues of fact is not demandable as of right. If this complaint had also demanded the recovery of possession, still the question of fraud would be of equitable cognizance to be determined by the court itself, while a jury trial would be proper only on the legal issue of recovery of possession.
3. Therefore, in this suit, a refusal of a motion to submit to a jury issues of fact upon the question of fraud in obtaining the deed sought to be cancelled, and a reference of the case to the master to take the testimony, are not immediately appealable; for they are not orders which "in effect determine the action and prevent a judgment from which an appeal might be taken," nor are they orders "involving the merits."
4. If such orders were appealable, no error would be declared in them.
5. *It seems* that the Supreme Court may itself order issues of fact to be submitted to a jury in equity causes pending before that court on appeal.
6. Cases reviewed, and this case distinguished from cases where a party is in possession of the land by descent or purchase, under a legal title.

Before Hudson, J., Berkeley, December, 1889.

This was a suit by Gilbert Geddes DuPont against Elizabeth C. S. DuBos, commenced June 19, 1889, to which B. H. Rutledge was added as a party defendant on his own motion, in December, 1889. The opinion fully states the case.

*Messrs. H. E. Young* and *Mitchell & Smith*, for appellant.

*Messrs. Rutledge & Rutledge*, contra.

October 7, 1890. The opinion of the court was delivered by

MR. JUSTICE McIVER.    The allegations contained in the complaint may be stated substantially as follows: 1st. That Thomas Bannister Seabrook departed this life in 1839, leaving a will, of which his daughter, who had subsequently intermarried with one Andrew Milne, became the qualified executrix.    2nd. That by said will the testator devised to his said daughter a house and lot on the corner of Bull and Rutledge streets, in the city of Charleston, and a plantation in St. Andrew's Parish, in fee conditional. 3rd. That Mrs. Milne died in 1882 without ever having had any issue of her body.    4th. That upon the death of Mrs. Milne, the plaintiff, being the sole heir of the said testator, became entitled to the said house and lot and plantation.    5th. That Mrs. Milne, by her will, undertook to devise the said property to two persons, designated in her will as Elizabeth Clark Seabrook Milne and Martha Bannister, wife of A. C. Whitridge, who, however, were strangers in blood both to the testator, Thomas Bannister Seabrook, and the testatrix, Mrs. Milne, but were treated by her as adopted daughters, though never formally adopted as such.    6th. That Mrs. Whitridge conveyed all her interest in the said property to the first named defendant herein.    7th. That immediately after the death of Mrs. Milne, the said defendant entered into possession of the property above mentioned, and soon thereafter, to wit, on the 20th of January, 1883, the plaintiff commenced actions at law against her to recover possession of the said property.    8th. That during the pendency of said actions negotiations were opened for the purpose of adjusting the matters in controversy, which resulted in a compromise whereby the plaintiff conveyed to the defendant, now Mrs. DuBos, the plantation in St. Andrew's Parish, and she executed to him a quit-claim deed for the house and lot in the city of Charleston; and that in the progress of such negotiations the said defendant set up a certain deed, a copy of which is filed with the complaint as exhibit A, and relied upon the same as a bar to plaintiff's claim; and that plaintiff, not doubting at the time the genuineness of said deed, and being influenced and deceived thereby, assented to said compromise.    9th. That during said negotiations the said defendant was represented by one Louis DuBos, as her confidential friend and adviser, with whom she subsequently intermarried.

10th. That subsequent information received, not earlier than the year 1888, aroused the suspicion in his mind that the deed filed with the complaint as exhibit A was a forgery, and subsequent investigation satisfied the plaintiff that such was the fact, and that it was so known to Mrs. DuBos at the time it was used in said negotiations, and the plaintiff so charges; and that it was used by Mrs. DuBos and her husband falsely and fraudulently to deceive the plaintiff and induce him to surrender his rights. 11th. That whether said deed was forged or not, the plaintiff avers that it operated as a surprise to him, and induced him to mistake his rights and to surrender the same without any consideration whatever. 12th. That the interchangeable deeds between plaintiff and defendant above referred to were dated     day of June, 1883. 13th. (This paragraph simply gives a description of the plantation and house and lot above referred to.) 14th. That the value of the rents and profits of the plantation from November, 1882, from which plaintiff has been excluded, is five hundred dollars a year. Wherefore judgment is demanded: 1st. That the deed from plaintiff to the defendant, Mrs. DuBos, be declared a nullity, and that she be required to surrender the same to be cancelled. 2nd. That plaintiff may have judgment against her for the sum of thirty-five hundred dollars for withholding said plantation from him, and for costs. 3rd. For such other and further relief as the nature of the case may demand.

The deed above referred to as exhibit A bears date 26th June, 1866, though it seems not to have been delivered until some time in the month of July, 1866, and it purports to be an indenture by and between Mrs. Geddes, who was a daughter of the testator, Thomas Bannister Seabrook, and her daughter, Miss Geddes, of the first part, and Mrs. Elizabeth Clark Seabrook Milne, of the second part, whereby the parties of the first part released to the party of the second part any claim which they or their heirs might then or thereafter have to the house and lot on the corner of Bull and Rutledge streets, in the city of Charleston, and the plantation in St. Andrew's Parish, in consideration whereof, and of the sum of twenty-five dollars, the party of the second part conveyed to the parties of the first part a house and lot, No. 653

King street, which the party of the second part had acquired by purchase from the estate of T. L. Bulow.

To this complaint the defendant, Mrs. DuBos, answered, admitting the allegations contained in paragraphs 1, 3, 6, 7, 9, 12, and 13, and denying those found in paragraphs 2, 4, 10, 11, and 14 of the complaint, and alleges that the deed now claimed by the plaintiff to have been forged, constituted only one among the many elements of equity relied on by her which led to the compromise referred to. And for a further defence alleges that the said Thomas Bannister Seabrook by his will devised and bequeathed the bulk of his large property, both real and personal, to his two daughters, Mrs. Geddes and Mrs. Milne, and a legacy of $6,000 was given to his granddaughter, Miss Faber; that at the time of his death his real estate consisted of several houses and lots in the city of Charleston and two plantations, one in St. Andrew's Parish, now in controversy, and the other on John's Island, and his personal estate consisted of negro slaves, bank stock, &c.; that the house and lot on the corner of Bull and Rutledge streets was devised to his daughter, Mrs. Milne, "to her and the lawful heirs of her body, and also an equal share of all my lands, negroes," &c.; and that the house and lot on the corner of Montague and Rutledge streets was devised to his daughter, Mrs. Geddes, in the same terms, to wit: "to her and the lawful heirs of her body, and also an equal share of all my lands, negroes," &c.; that subsequently a controversy arose as to the rights of the parties under the will, the two daughters claiming that except as to the two houses and lots devised specifically to them respectively, and the special legacy to Miss Faber, they were entitled as tenants in common to the entire balance of the estate, both real and personal, and Miss Faber claiming that however this might be as to the lands and negroes, that the bank stock and other personalty was intestate property, in which she was entitled to a one-third interest; that to determine this controversy, a bill was filed in the Court of Equity, which resulted in a decree that the lands and negroes were divisible equally between Mrs. Geddes and Mrs. Milne as tenants in common, but that as to the remainder of the property, Miss Faber was entitled to share equally with them, and a writ of partition was ordered

for the purpose of making such divisions, under which the property was divided, in which division the John's Island plantation was allotted to Mrs. Geddes and the St. Andrew's plantation to Mrs. Milne, she paying $4,000 for owelty of partition, whereupon Mrs. Geddes went into possession of the John's Island place and Mrs. Milne took possession of the St. Andrew's place and retained the same until her death; that soon after the actions at law mentioned in the complaint were instituted by the plaintiff to recover possession of the house and lot on the corner of Bull and Rutledge streets and the plantation in St. Andrew's Parish, this defendant filed a complaint against the plaintiff to enjoin said actions at law on the various grounds therein stated, and amongst others on the covenants in the deed now alleged to be forged; and as to the action for the St. Andrew's plantation, on the additional and independent ground that the plaintiff had no pretence of title thereto; that soon thereafter negotiations were entered into for the compromise of all the matters in dispute between the parties, and after full and careful consideration, with every opportunity for investigation offered, an agreement was reached whereby the interchangeable deeds above referred to were executed, as this defendant says, on the 24th of July, 1883, and the several actions were all discontinued, whereupon the plaintiff went into possession of the house and lot on the corner of Bull and Rutledge streets, then valued at $8.000, and shortly afterwards sold the same for that sum, and this defendant was left in the undisputed possession of the St. Andrew's plantation, then valued at the sum of $3,000. For further defences this defendant sets up the statute of limitations and *laches.*

The other defendant, Mr. Rutledge, having intervened by petition, sets up certain mortgages held by him on the property in controversy, taken without notice of plaintiff's claim, and claims the rights of a purchaser for valuable consideration without notice.

The case being thus at issue, before any testimony was taken, the plaintiff applied for an order, reciting that one of the main questions involved being whether the deed above mentioned was forged and false, that such question be referred to a jury for trial, and the defendant, Mrs. DuBos, at the same time applied for an order referring the issues to the master. His honor, Judge Hud-

son. before whom these orders were applied for, refused the plaintiff's motion, saying: "The court considers that this is essentially an equity case to be tried by the court, as equity cases usually are. Other questions, the determination of which may dispose of the case without the necessity of having to inquire into the question of fraud, are set up in the answer, and therefore it would be premature to make such an order. Under these circumstances, and even were it reduced to a simple question of fraud, the court would not, even then, as at present advised, feel called upon to order the issue to be tried by a jury." He therefore granted an order referring the cause to the master, "to take the testimony and report the same to the court, with leave to report any special matter."

From this judgment the plaintiff appeals upon the several grounds set out in the record, which need not be specifically set out here, as they present substantially the single question whether the Circuit Judge erred in refusing to refer the issue as to whether the deed in question was a forgery to a jury for trial.

There is, however, a preliminary question raised by the counsel for respondent, as to whether the matter is appealable at this stage of the case, which must first be disposed of. So much of section 11 of the Code as relates to this matter reads as follows : "The Supreme Court shall have exclusive jurisdiction to review upon appeal : (1) Any intermediate judgment, order, or decree involving the merits, &c. (2) An order affecting a substantial right, made in an action, when such order in effect determines the action, and prevents a judgment from which an appeal might be taken," &c.

It is quite clear that the order here under review is not appealable under subdivision 2 of section 11 of the Code ; for even granting that it affects a substantial right, that is not sufficient, for it must also, in effect, determine the action and prevent a judgment from which an appeal might be taken, and this it certainly does not do. *Garlington* v. *Copeland*, 25 S. C., 41.

Is the order appealable under subdivision (1) of section 11 of the Code ? There is no doubt that it is an intermediate order, but that is not sufficient, as it must also involve the merits. So that the real inquiry is, does the order in question involve the

merits of the plaintiff's case as made by him ?   The case as presented in the complaint is unquestionably a case of purely equitable cognizance.   This renders it necessary to inquire whether, in such a case, the refusal of an order to refer one of the issues raised to a jury for trial involves the merits.   This, as it seems to us, necessarily involves the inquiry whether in an equity case either party has the right to demand that all or any of the issues raised therein shall be tried by a jury ; for until such a right is established, an order denying it cannot properly be said to involve the merits.   Accordingly we find that in the case of *Blakely* v. *Frazier* (11 S. C., 122), the former Chief Justice, in delivering the opinion of the court, found it necessary first to show that the defendant had a right to demand that the place of trial should be changed before he could reach the conclusion that the denial of such right involved the merits.   It is true that this would render it somewhat embarrassing to determine the question if presented on a preliminary motion to dismiss an appeal before it was heard on the merits ; but in such a case the proper course doubtless would be to suspend any determination of the motion until the case had been fully heard on the merits, as this court has sometimes found it necessary to do for other reasons.   But be that as it may, in the present case (as in the case of *Blakely* v. *Frazier*, *supra*), no such embarrassment can arise, for the question is not presented by a preliminary motion to dismiss the appeal, but is only raised after full argument on the merits.

We will proceed, then, to inquire whether the plaintiff had a right to demand a trial by jury of the issue proposed in the case as made by him.   Inasmuch as the plaintiff shows by his complaint that he had voluntarily divested himself of the legal title to the premises in controversy and vested the same in the defendant, Mrs. DuBos, it is quite certain that his claim as made is not based upon his legal title, but solely upon his equity to have his deed cancelled, upon the ground that he was induced to execute it by fraud.   His case is therefore one of purely equitable cognizance.   Whether he could have maintained an action at law to recover possession of the premises in controversy by ignoring his own deed as·void for the alleged fraud, might possibly admit of grave doubt ; but that is not a pertinent inquiry now, as he

makes no such case.    He has selected his forum and has invoked
the equity powers of the court, and he must abide by the rules
and practice of that side of the court.

That in a case of this kind neither party has a right to demand
that all or any one of the issues shall be tried by a jury is so well
settled as not to call for any extended discussion.    The fact that
the jurisdiction and powers formerly exercised by the Court of
Equity are now vested in the Court of Common Pleas have worked
no change in the rules and practice heretofore existing in each
of these jurisdictions, except that, under the provisions of the
Code, causes of action or defences' which were heretofore cogniz-
able by the Court of Equity may be united with legal causes of
action or defences; but, as is said by Chief Justice Simpson in
*McMahon* v. *Dawkins* (22 S. C., at page 320): "When they are
thus combined, they do not lose their distinctive features and
characteristics, nor are the rules heretofore existing as to their
trial changed, * * * and the mode of trial of each is still pre-
served."    And applying his remarks to the case then in hand,
he said: "The complaint contains two causes of action, the first
to set aside a deed of land for fraud, and the second to recover
possession of the land.    The one is equitable and the other legal.
* * * These rules required in this case that the first cause of
action should be tried by the judge and the second by the jury,"
&c.

That case is conclusive of the present, for even if this case
could be regarded as an action in which the Court of Equity was
asked to set aside a deed for fraud, and then as an action to re-
cover possession of the land (although it is noticeable that there
is no allegation' in the complaint that plaintiff has the title to the
land, and no demand for judgment that he recover possession
thereof), yet even then, as in the case of *McMahon* v. *Dawkins*,
there would be "two causes of action, the first to set aside the
deed of land for fraud, and the second to recover possession of
the land;" the former being equitable, and, as such, triable by
the court, either directly or through the aid of the master, and
the other being legal and triable by a jury.    So that even if the
case could be regarded as of that character, it is obvious that the
plaintiff would have no right to demand a trial by jury of the

issue involved in the equitable branch of the case. But, as we have said, we do not think the case can be so considered, for there is not only no demand for the recovery of the possession of the land, which, however, is a matter of small importance; but what is more material, there is no allegation in the complaint that the plaintiff has the legal title, and, on the contrary, the facts stated in the complaint show that he has no legal title, and his case rests entirely upon his alleged equity to have the deed by which he parted with the legal title cancelled.

The cases of *De Walt* v. *Kinard* (19 S. C , 286), and *Sale* v. *Meggett* (25 *Id.*, 72), are.so wholly different from the one now under consideration, that it is difficult to perceive what application they can possibly have to the present case. In the former case the action was "of a twofold character, legal and equitable, and the defences were of the same character. The main purpose was to recover possession of real property, upon the allegation that plaintiff had title thereto," &c. (page 290), and relief of an equitable character by injunction, and practically for the appointment of a receiver was also sought; and defences of a like twofold character were set up. and the court held, as in McMahon *v.* Dawkins, *supra*, that while the equitable issues were triable by the court, the legal issues must be tried by a jury, unless a jury was waived. In the other case—*Sale* v. *Meggett*—the action was for foreclosure of a mortgage of real estate formerly belonging to James C. Meggett, executed by his heirs and devisees, to which Klinck was made a party defendant, because he was in possession of the land, claiming it as a purchaser at sheriff's sale under an execution against James C. Meggett. Klinck answered, setting up a purely legal defence—paramount title under his purchase at sheriff's sale—and the court held that Klinck was entitled to a trial by jury of the issue raised by such defence. The views herein presented are fully sustained by what is said in *Adickes* v. *Lowry*, 12 S. C., at page 108; *Cooper* v. *Smith*, 16 *Id.*, at page 333; *Chapman* v. *Lipscomb*, 18 *Id.*, at page 232; *Reagan* v. *Bishop*, 25 *Id.*, at page 589; *Pelzer* v. *Hughes*, 27 *Id.*, 418.

Counsel for appellant also relies upon certain cases decided by the former Court of Appeals in Equity, which will now be con-

sidered. The cases cited from DeSaussure's Reports may be disposed of by the remark that the orders for issues were practically made by consent, and hence they decide nothing. In *Drayton* v. *Logan* (Harp. Eq., 67), the bill was filed to foreclose certain mortgages on real estate, and the defence was that the mortgage debts had been paid in fact as well as by the presumption arising from lapse of time, to repel which a number of facts and circumstances were relied on. Chan. Gaillard, who heard the case on Circuit, without any motion from either party for an issue to be sent to a jury, concluded that it was a proper case for an issue, and granted an order to that effect. From that order an appeal was taken, and the order was reversed (not affirmed as there stated). See the opinion of the Court of Appeals in a note to 3 Strob. Eq., 37, where it was held that the Court of Appeals had authority to correct a mistake in the exercise of the discretionary power of the Circuit Court in granting or refusing an order for an issue. There is therefore nothing in the case to justify the inference that either party to the case has a right to demand an issue; but, on the contrary, it is recognized as a matter resting solely in the discretion of the Circuit Court, which, if abused or mistakenly exercised, may be corrected by the Court of Appeals.

The same remarks are applicable to the case of *Blackman* v. *Stogner* (Cheves Eq., 175), where the question was as to the execution of a note, upon which the testimony proved to be conflicting. There was no motion made at the outset for an issue, but during the progress of the argument the counsel for complainant asked for an issue, which the Circuit Chancellor did not deem necessary, and the Court of Appeals, without even intimating that either party had a right to demand an issue, simply directed that the question be submitted to a jury for their own satisfaction.

In *Jaggers* v. *Estes* (3 Strob. Eq., 34), the question was as to the delivery of a deed. Chan. Caldwell, who first heard the case, reached the conclusion that the deed had not been delivered; but the case having been sent back upon another ground, it again came before Chan. Johnston, who, although he says, "The testimony does not materially differ from that which was offered before Chancellor Caldwell," arrived at a different conclusion—that the deed was delivered. Although it appeared that the

defendant, at the call of the case on the last hearing, moved for an issue at law, which was refused, there is nothing in the opinion of the Court of Appeals to indicate that the defendant had a right to demand such issue, but rather the contrary, and the issue was ordered simply as a matter of discretion, in view of the fact that two Chancellors had differed in the conclusion proper to be drawn from the conflicting testimony, some of it being impeached as unworthy of belief.

It seems to us, therefore, that while these cases do show that, under the former practice of the Court of Equity, the granting or refusing an order for an issue was a matter resting in the discretion of the Circuit Chancellor, but subject to review by the Court of Appeals, yet they are far from showing that either party has a legal right to demand such issue, and rather show the contrary. If so, then the refusal of such demand cannot be regarded as a denial of a substantial right, and hence an order refusing a motion for an issue cannot be regarded as an order involving the merits. While, therefore, such an order might have been appealable formerly, it is not so now under the present law defining the jurisdiction and practice of the Supreme Court.

It is also to be observed that in all these cases the appeals were from the final judgment, and hence they furnish no reason to suppose that even the former Court of Appeals in Equity would have entertained an appeal from an order granting or refusing a motion for an issue, in advance of the hearing of the case upon the merits by the Circuit Court. What we have said is not to be understood as impairing the power of the Supreme Court to order an issue of its own motion, if upon the hearing of an appeal in an equity case it shall have sufficient doubt as to the correctness of the finding of some material fact by the Circuit Court to warrant such a course, as was done in *Shaw* v. *Cunningham* (9 S. C., 271); for on the hearing of such an appeal this court has jurisdiction to determine questions of fact as well as of law, and if it desires the aid of a jury in determining any question of fact, there is no reason why it may not invoke such aid.

The case of *Fox* v. *Ford* (5 Rich. Eq , 349), is relied on to show that plaintiff had a right to demand the order for an issue; but, as will be seen, it is not in point. In that case one Mary

Ford had made a deed of gift of a tract of land and two slaves to her son, Morton Ford, who had the deed duly recorded and went into possession of the land and retained the same until it was sold by the sheriff under executions against him. The defendant, Christian Rumph, became the purchaser at this sale, and took titles from the sheriff. The bill was filed by two of the heirs of Mary Ford against Morton Ford and Christian Rumph to set aside the deed of gift for fraud and for partition of the land. Rumph answered, denying all knowledge and notice of the fraud alleged, and insisted upon his legal title under the purchase at sheriff's sale. The court held that Rumph was entitled to have the legal issue as to his title in the land, presented by his answer, tried by a jury. That case, therefore, is like the case of *Sale* v. *Meggett, supra,* and is wholly unlike the present case.

In both of those cases a defendant in possession of land, claiming it by a legal title, demanded that an issue as to such title should be tried by a jury, while here the plaintiff, who makes a similar demand, is not in possession of the land; does not, and cannot, set up any legal title, for the statements in his own complaint show that it has passed out of him by his own voluntary deed; but his only claim rests upon an equity growing out of an alleged fraud practised upon him. The same remarks apply to the cases cited by appellant's counsel to show that the heir at law is entitled to an issue to try his title to the inheritance. Upon the death of the ancestor the legal title to his real estate at once descends to and vests in the heir at law, and, of course, when any effort is made to deprive him of such title or of the possession which follows it, as, for example, by setting up an alleged will of the ancestor making some other disposition of the property, the heir standing upon his legal title has a right to demand an issue at law to determine the validity of such title. Here, however, as we have said, the plaintiff is not in possession, and is not claiming any legal title, and hence those cases are not applicable.

It seems to us, therefore, that the order of Judge Hudson is not appealable, because it did not deny to the plaintiff any substantial right to which he was entitled, and hence did not involve the merits. But even if the order could be regarded as appeal-

able, we think it clear, for the reasons above stated, that there was no error in refusing the plaintiff's motion.

The judgment of this court is, that the order appealed from be affirmed.